IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Louis Gainey, Jr., #185519, | ) | C/A No. 5:15-03253-BHH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND |
| | ) | RECOMMENDATION |
| Warden Leroy Cartledge, | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Louis Gainey, Jr., ("Petitioner"), a state prisoner, filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("R&R") on Petitioner's Motion to Stay filed September 3, 2015, ECF No. 23, and Respondent's Return and Motion for Summary Judgment filed October 16, 2015, ECF Nos. 27, 28. On October 19, 2015, pursuant to *Roseboro v. Garrison*,[1] the court advised Petitioner to file a Response to Respondent's Summary Judgment Motion if he wished to pursue his case. ECF No. 29. On January 22, 2016, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 57. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Petitioner's Motion to Stay, ECF No. 23, be denied and Respondent's Motion for Summary Judgment, ECF No. 28, be granted.

I.    Background

Petitioner is currently incarcerated at McCormick Correctional Institution of the South

---

[1] 528 F.2d 309 (4th 1975).

Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2007, Petitioner was indicted during the October term of the Richland County Grand Jury for Assault and Battery with Intent to Kill ("ABWIK") (2007-GS-40-03131). App. 577-78. Petitioner proceeded to a jury trial from September 1-3, 2007, before the Honorable L. Casey Manning, Circuit Court Judge. App. 1. Petitioner was represented by James D. Cooper, Esquire, and Earnest Deon O'Neil, Esquire. *Id.* Assistant Solicitors Heather Weiss and Joanna A. McDuffie represented the State. *Id.* The jury found Petitioner guilty of ABWIK, App. 395, and Judge Manning sentenced Petitioner to life in prison without the possibility of parole, App. 406.

Appellate Defender Katherine Hudgins represented Petitioner in the appeal of his conviction and sentence. App. 410-419. In an *Anders*' appellate brief,[2] Petitioner raised the following issue:

> Did the trial judge err in charging the jury that malice may be inferred from the use of a deadly weapon where there was evidence presented that would reduce the charge from assault and battery with intent to kill to assault and battery of a high and aggravated nature?

App. 413. On February 1, 2012, the South Carolina Court of Appeals dismissed Petitioner's appeal in an unpublished opinion. App. 420-21. On June 26, 2012, the South Carolina Court of Appeals issued a Remittitur. ECF No. 27-4.

II.    Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on July 6, 2012. App. 422-460. Petitioner asserted he was being held in custody unlawfully for "(a) Ineffective assistance of counsel; (b) due process of law; (c) see memorandum of law support attachment." App. 424. In the attached memorandum of law, Petitioner alleged the following grounds, repeated verbatim:

---

[2] *See Anders v. California*, 386 U.S. 738 (1967).

1. Trial counsel prejudice defendant failure request for a second mental evaluation opinion to deter if the defendant was incompetency to stand trial. Violation 6th Amendment & 14th Amendment due process of law. App. 432.
2. Trial counsel prejudice the defendant by failing to object to the defendant been seen in front of the jury member eyes with shackles on in the witness stand so prejudice to a fair trial by the member of jury. App. 438.
3. Trial counsel prejudice defendant for failing to prepare and to conduct a proper pre-trial investigation. App. 443.
4. Counsel prejudice Applicant failure to object to state closing when solicitor stated you see how large the stab wound was. App. 451.
5. Trial counsel prejudice the Applicant failing to object to the malice charge violation 6th Amendment. App. 453.
6. Counsel prejudice the Applicant failure to object when the first officer at the seen stated that I ran by his car so fast. App. 457.

Assistant Attorney General Robert D. Corney filed a Return on behalf of the State. App. 461-468. A PCR hearing was held on January 15, 2013, before the Honorable G. Thomas Cooper. App. 469. Petitioner was present and represented by David E. Belding, Esquire; Assistant Attorney General Corney appeared for the State. *Id.* Petitioner; his two trial attorneys; and Gregory Gainey, Petitioner's brother, testified as witnesses during the PCR hearing. App. 469-560. In an Order filed March 8, 2013, the PCR court denied Petitioner's PCR Application in full, finding Petitioner raised the following allegations and making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the   opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law required pursuant to S.C. Code Ann. §17-27-80 (1985).

> In a post-conviction relief action, the Applicant has the burden of proving the allegations in the application. Rule 71.l(e), SCRCP; Butler v. State, 286. S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 286, S.C. 411, 334 S.E.2d 813 (1985) (1984.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Butler, 286 S.C. 441, 334 S.E.2d 813 (1985). The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625 (citing Strickland). Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625.

*Failure to Have Second Mental Evaluation Conducted*

Applicant first contends counsel was ineffective for failing to have him mentally evaluated prior to the start of his trial.

Applicant testified at the PCR hearing he suffers from Post-Traumatic Stress Disorder ("PTSD") and is currently on "anti-psychotic" medication at the Department of Corrections for schizophrenia. He noted he was not on that medication at the time of trial. Applicant stated a lady came by the jail from "a private place" once prior to his trial to speak with him about his mental health issues, but ultimately said nothing was wrong with Applicant. Applicant said he asked counsel to get a second evaluation done, but counsel did not do so. Applicant noted he was in a psychiatric ward once prior in 1983 for roughly thirty (30) days and said he had discussed this with counsel in their pretrial meetings.

James "Jay" Cooper, Esquire, (hereafter "Cooper") testified he took over representation of Applicant in late 2008 or early 2009 from former assistant public defender Carolyn Gripp, who had originally represented Applicant. He said he met with Applicant four or five times at the jail prior to trial, with each meeting lasting at least fifteen to twenty minutes and some lasting much longer. Cooper said he was aware of Applicant's mental health history prior to taking over the case as he had discussed it in depth with Gripp before the case was transferred to him. Cooper stated Applicant underwent a mental evaluation by Dr. Crawford prior to Cooper taking over the case, from which Applicant was found competent to stand trial.

Cooper went on to say he did not recall ever discussing having a second evaluation conducted with Applicant, and plainly testified he did not believe one was necessary based upon his review of Dr. Crawford's evaluation report and Cooper's personal interaction with Applicant. He also noted he never had any

concerns with Applicant's ability to comprehend and participate in their discussions, nor did he ever have a concern with Applicant's competency. Cooper noted Applicant did have a history of substance abuse and distress disorders, but had no history of anything that would affect his competency to stand trial.

Thereafter, Applicant's second-chair attorney, Deon O'Neil, Esquire (hereafter "O'Neil") testified as well. Like Cooper, O'Neil testified he never had any concerns with Applicant's ability to comprehend and/or participate in their pretrial discussions about the charges Applicant was facing, and he did not believe a second mental evaluation was necessary on Applicant.

This Court finds this allegation of ineffectiveness to be wholly without merit. O'Neil and Cooper (collectively referred to as "counsel") reasonably relied on their perceptions and interactions with Applicant during the several months prior to trial to decide a second mental evaluation was not necessary. See e.g. Jeter v. State, 308 S.C. 230, 417 S.E.2d 594 (1992) (finding counsel's performance not outside the range of reasonable professional assistance in failing to seek psychiatric evaluation of client where counsel reasonably relied on his own perceptions). Counsel's testimony as to his perceptions that Applicant had no difficulty comprehending and participating in the discussions is **credible**. Applicant's testimony to the contrary is **not credible**. Accordingly, this Court finds counsel was not deficient in his performance in opting not to have Applicant evaluated a second time.

Further, Applicant has failed to establish the required resulting prejudice. Applicant did not produce the results of a second evaluation, or the testimony of a medical expert, nor any other evidence to show that had a second evaluation been sought, the results would have differed from those given by Dr. Crawford in the first evaluation. "Under the second prong of Strickland, the petitioner need only demonstrate a 'reasonable probability' that he was either insane at the time of the [incident] or incompetent at the time of [trial]." Id. at 234. Applicant has set forth no evidence to prove either. Therefore, Applicant has not met his burden in proving there is a "reasonable likelihood" the outcome would have differed had Applicant requested a second evaluation. Accordingly, this allegation is wholly without merit and the request for relief therefrom must be denied.

*Failure to Object to Shackles*

Applicant next contends counsel was ineffective for failing to object to the use of shackles during the course of the trial in front of the jury. Applicant testified he believed the restraints prejudiced him in front of the jury as they "kept [him] from being who [he is]" and prevented him from writing or taking notes during trial. Applicant noted he felt he couldn't defend himself at trial while in the restraints.

This Court finds this allegation to be without merit as well. The record reflects counsel, on more than one occasion during the court of the trial, objected to the

restraints and the possible prejudice that could result from the jury seeing Applicant in such restraints. At the start of trial, counsel requested to have the metal shackles replaced with plastic restraints to avoid any noise as he "[knew] security want[ed] [Applicant] shackled". (Trial Tr. p. 12, l. 5). The judge, deferring to security personnel in the courtroom, ultimately concluded the jury could not see the shackles and denied the request. After the state rested its case in chief and before the defense called Applicant to the stand, counsel requested outside the presence of the jury that Applicant be allowed to take the stand before the jury entered the courtroom to continue to block the shackles from their sight. (Trial Tr. p. 286, ll. 19 – 23). The trial judge granted the request and Applicant took the witness stand prior to the jury's entry to the courtroom, thereby avoiding the jury seeing the leg restraints. Based on the record, it is clear counsel undertook diligent and objectively reasonable precautions to avoid the jury ever seeing that Applicant was wearing shackles.

Ultimately, the trial judge ruled that the shackles were necessary for courtroom safety and allowed certain precautions to avoid the jury seeing them. "Whether a defendant is restrained during the trial is within the trial judge's discretion." State v. Tucker, 320 S.C. 206, 209, 464 S.E.2d 105, 107 (also finding trial court not in error in requiring defendant to wear restraints when court took precautions to minimize any prejudice that may be caused by the defendant being shackled). It is clear the judge and security personnel agreed there was a need for Applicant to remain in his restraints during the course of the trial, but undertook all requested precautions to avoid any improper inferences by the jury. Applicant has failed to show the restraints were ever seen by the jury or otherwise resulted in prejudice to his case. Accordingly, this allegation is denied.

*Failure to Investigate*

Applicant alleges counsel was ineffective for failing to properly investigate his case prior to proceeding to trial in the matter. Specifically, Applicant contends counsel failed to interview several witnesses who could have testified on his behalf at trial, as well as failed to conduct a sufficient pretrial investigation to challenge the state's theory that Applicant intentionally stabbed victim with a screwdriver.

Applicant testified he knew the victim about one (1) year and was eventually engaged to be married to her after being in a relationship for a while and living together. Applicant testified he remembered the entire incident on the night in question "from beginning to end" and stated it all began with him getting off of work and visiting his sister with victim. Upon returning home, Applicant stated he noticed a truck parked at the side of his house that belonged to a man he had previously had an altercation with. Victim went over to the neighbor's house where that man was, where she sat on the porch filing her fingernails. Applicant stated he went over to tell victim to come home, at which time she embarrassed him by telling the others on the porch Applicant accused her of cheating on him.

Applicant went on to say he grabbed victim on the side of the house as she walked away, at which time she pulled out the fingernail file and "tried to resist" him. Applicant said they "got into a scuffle" during which she hit him several times and he hit her in return several times. Applicant noted he took the fingernail file from the victim and hit her with it several times. Applicant said when the fight was over, he noticed the nail file was bent out of shape so he ran away from the scene "to protect himself". He contended there was never a screwdriver involved in the altercation, and said no screwdriver (or nail file) was ever produced as the weapon at trial.

Applicant testified he loved victim and he never had any intention of hurting her during the altercation, but it all happened "spur of the moment." Applicant stated he "wanted to go home" with victim "that night," and reiterated he had no hatred for victim when the incident occurred. Applicant conceded he had testified at trial he did not recall the incident as he had "blacked out", as well as that his PCR application reflects the same loss of memory about the fight. However, Applicant alleged, things "started coming back" to him after he was placed on medication at the Department of Corrections. Applicant said he changed his story during the testimony at trial to say he did not remember anything because counsel told him before the start of trial the jury wouldn't believe his "nail file story". Applicant acknowledged he was under oath to tell the truth when he took the stand at trial and that the testimony he gave was not the same as what he was testifying to under oath at the PCR hearing.

Also called at the hearing by Applicant was Gregory Gainey, Applicant's younger brother (hereafter "Gainey"). Gainey testified he was never approached by counsel prior to trial about testifying for Applicant, but that he would have testified had counsel asked him to. Gainey said he had the opportunity to observe Applicant and victim's relationship many times and said they "got along well" and had a "typical relationship". Gainey noted he sometimes believed Applicant may have been "too smitten" with victim. He readily admitted he had no personal knowledge of the incident from which these charges stem and was not at the scene when the incident occurred.

Cooper testified he did recall Applicant providing names of several family members whom Cooper considered calling as witnesses at trial, but said he ultimately did not call them as he did not believe their testimony would be "productive" to the case as none of them could offer any testimony about the incident itself. He explicitly noted it was his particular trial strategy not to call those or any other witnesses. Cooper said he wanted to be careful about what he introduced at trial as he did not want the jury to think he was "victim bashing", but noted there was no doubt Applicant loved victim very much. Counsel said that much was clear throughout the course of the trial and he did not think that would ever be questioned at trial.

Regarding Applicant's trial testimony, Cooper said Applicant was never clear with him as to what his story would be on the witness stand, so he discussed his concerns in that regard with Applicant in the holding cell at the courthouse prior to trial. Cooper noted he did *not* ever tell Applicant what to testify to on the stand besides telling the truth, but did tell Applicant he had to be "more clear" in his testimony as his recitation of the night to counsel was confusing and implausible. Cooper stated he could not recall whether Applicant ever mentioned the so-called "fingernail file" theory to him pretrial, but may have. Cooper also agreed the wounds victim suffered were severe and certainly life threatening based on the surgeon's trial testimony.

O'Neil testified thereafter regarding his pretrial discussions with Applicant in which he told Applicant his "fingernail file" theory would probably not be believed by the jury as the wounds inflicted were far too severe to have been caused by a file. O'Neil noted Applicant always maintained in their discussions he had "blacked out" during the incident and did not remember what happened. O'Neil went on to say he never told Applicant what to testify to or *not* testify to, nor did he insinuate in any way Applicant should do anything but tell the truth in his testimony. On cross-examination, O'Neil recalled Applicant kept his tools under the sink in the kitchen where he had been just prior to the incident, so it was not a farfected theory he committed the stabbing with a screwdriver.

After a thorough review of the record and testimony presented to the PCR hearing, this Court finds Applicant has failed to prove counsel was ineffective in this regard. First, this Court finds the testimonies of Cooper and O'Neil (collectively "counsel") to be **credible**, while conversely finding Applicant's testimony, especially related to his recollection of the incident to be **not credible**.

With regards to the failure to investigate and/or call witnesses claim, Applicant has failed to prove counsel was objectively unreasonable in his investigation and/or tactics at trial in that regard. In fact, counsel's credible testimony was he specifically made the strategic choice not to call the witnesses at trial that Applicant had provided as he did not think it would be advantageous to Applicant's defense. See Underwood v. State, 309 S.C. 560, 563, 425 S.E.2d 20, 22 (1992) ("Where counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective.") Further, Applicant failed to produce the testimony of any witnesses, other than his brother, to carry his burden in proving resulting prejudice from that alleged deficiency. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (finding a PCR applicant must produce the testimony of a witness to establish prejudice from their failure to testify at trial). Additionally, this Court finds the testimony of Applicant's brother, Gainey, to have been wholly unremarkable and of little value to Applicant's defense as he had no knowledge of the incident and merely served as a character witness. Accordingly, Applicant has not carried his burden in this regard.

As to Applicant's claim that counsel failed to properly investigate the underlying facts of the case to challenge the state's theory, this Court likewise finds that allegation to be without merit. This Court would reiterate the previous credibility finding as to Applicant's rendition of the incident. Applicant's story has changed numerous times and Applicant all but admitted he lied under oath in that regard, either at trial or during his PCR testimony. This Court finds Applicant's rendition of fact to be **wholly not credible**. The evidence set forth in the record from trial is clear in showing the wounds inflicted to victim's body were horrific and not the product of a nail file as he now alleges. Further, the trial record is *completely* void of *any* mention of a nail file by any witness presented at trial, including Applicant's own testimony. Therefore, Applicant has failed to prove counsel was deficient in his performance for failing to conduct some further investigation.

The instrument actually used to inflict the injuries to the victim is of little consequence to the ultimate analysis by this Court, especially in light of Applicant's trial testimony witnessed by the jury that he "blacked out" and did not recall what actually occurred. Applicant seems to allege his unwavering love for victim changes the analysis of his guilt to Assault and Battery with Intent to Kill ("ABIK") based upon a lack of express malice. "ABIK is defined as an unlawful act of a violent nature to the person of another with malice aforethought, either express of implied." State v. Wilds, 355 S.C. 269, 275, 584 S.E.2d 138, 141 (Ct. App. 2003). "Implied malice is when the circumstances demonstrate… 'a reasonable prudent man would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." Id. at 275 – 276. "Although malice must be aforethought, there is no requirement that it must exist for any appreciable length of time before the commission of the act" and "[i]t may be conceivable at the very moment the assault occurs." Id. at 277.

It is clear Applicant's stabbing of victim repeatedly with such extreme force that she was disemboweled would reasonably lead to a strong likelihood of death. The trauma center surgeon testified at trial that victim's injuries were in fact life-threatening. Therefore, it was reasonable for the jury to infer implied malice existed, regardless of Applicant's contention that he "didn't intend to hurt" victim. Additionally, because Applicant's case was heard to prior to the October 12, 2009, decision in Belcher, the jury was permitted to draw an inference of malice simply from Applicant's alleged use of a deadly weapon, which the testimony pointed to being a screwdriver. Accordingly, this allegation is without merit as any further investigation Applicant alleges counsel should have done into his rendition of the incident would not have created a "reasonable probability" of a different outcome of trial.

*Failure to Object Jury Charge on Permissible Inference of Malice*

Finally, Applicant contends counsel was ineffective for failing to object to the trial judge's jury instruction on the permissible inference of malice from the use

of a deadly weapon. This Court finds this contention to be erroneous and improperly raised in the current action.

The case of <u>State v. Belcher</u>, 385 S.C. 597, 685 S.E.2d 802 (2009), was decided by the South Carolina Supreme Court on October 12, 2009, roughly one full month after Applicant was convicted of the current charges. <u>Belcher</u> "represents a clear break from our modern precedent" approving of the jury charge on inference of malice from use of a deadly weapon, expressly overruling some twenty-six (26) cases decided over the court of more than 100 years, ranging in date from 1894 to 2006. 385 S.C. at 612, 685 S.E.2d at 810. The charge given in Applicant's case was, at the time of his trial, the sanctioned charge on the law. Because the <u>Belcher</u> decision posed a clear break from long-established precedent and was not decided until *after* Applicant's conviction, counsel was not objectively unreasonable in failing to pose an objection to the charge given. <u>Gilmore v. State</u>, 314 S.C. 453, 445 S.E.2d 454 (1994) (attorney is not required to be clairvoyant or anticipate changes in the law which were not in existence at time of trial) (overruled on other grounds by <u>Brightman v. State</u>, 336 S.C. 348, 520 S.E.2d 614 (1999)).

Further, the South Carolina Supreme Court expressly noted in the opinion that the "ruling, however, will not apply to convictions challenged on post-conviction relief." <u>Id</u>. at 613, 685 S.E.2d at 810. Accordingly, this issue is not proper grounds for relief through this PCR action. It is therefore denied and dismissed.

Having found the allegations raised by Applicant at the PCR hearing to be wholly without merit, this Court finds the current application for post-conviction relief must be denied and dismissed **with prejudice**.

CONCLUSION

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and with prejudice.

Except as discussed above, this Court finds that the Applicant failed to raise all additional allegations set forth in his application at the hearing and has, thereby, waived them. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. <u>Janasik v. Fairway Oaks Villas Horizontal Property Regime</u>, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." <u>Lyles v. BMI, Inc.</u>, 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issues at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

IT IS THEREFORE ORDERED:

1. That the Application for Post-Conviction Relief must be denied
   and dismissed **with prejudice**; and
2. The Applicant must be remanded to the custody of the
   Respondent.

App. 562-76.

PCR Counsel filed a Notice of Appeal on Petitioner's behalf on March 15, 2013. ECF

No. 27-5. On appeal, Appellate Defender Susan B. Hackett filed a *Johnson*[3] petition for a writ of

certiorari to the South Carolina Supreme Court on Petitioner's behalf. ECF No. 27-6. In the

petition, Petitioner presented the following issue for review:

> In violation of Petitioner's right to the effective assistance of counsel pursuant to
> the Sixth and Fourteenth Amendments to the United States Constitution, trial
> counsel failed to object to the trial judge's instruction to the jury which permitted
> malice from the use of a deadly weapon in order to convict him of assault and
> battery with intent to kill.

ECF No. 27-6. ECF No. 10-6. The South Carolina Supreme Court denied the petition on October

8, 2014,[4] and a Remittitur was sent on October 24, 2014. ECF No. 27-7.

Petitioner filed a second PCR action on October 29, 2013. ECF No. 27-8. There,

Petitioner argued, as stated verbatim:

a) Ineffective assistance of PCR counsel.
b) Violation of the 14th Amend. per U.S. & S.C. Const.s.
c) Violation of the 6th & 14th Amend. Per U.S. & S.C. Const.s.
d) After/Newly discovered evidence.

*Id.* at 2. On April 15, 2014, Assistant Attorney General J. Clayton Mitchell filed Return on

behalf of the State. ECF No. 27-9. There, the State argued Petitioner's second PCR action should

be dismissed as successive. *Id.* at 3. Additionally, the State argued that Petitioner's second PCR

---

[3] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).
[4] The South Carolina Supreme Court's denial was not made part of the record before the court.

should be dismissed for failing to comply with the filing procedures of the Uniform Post-Conviction Procedure Act and is barred under the doctrine of *res judicata*. *Id.* at 4. The Honorable Robert E. Hood issued a Conditional Order of Dismissal on May 7, 2014, denying and dismissing the action, and issued the Final Order of Dismissal on July 1, 2014. ECF No. 27-10.[5] In the Final Order of Dismissal, Judge Hood indicated that Petitioner did not respond to the Conditional Order of Dismissal. *Id.* On July 16, 2014, Petitioner filed a Rule 59(e) Motion requesting the court alter and amend its Order. ECF No. 27-11. On June 19, 2015, Judge Hood issued an Amended Final Order of Dismissal, and denied Petitioner's request for relief because "he ha[d] not shown why the Conditional Order of Dismissal should not become final." ECF No. 27-12. Petitioner did not appeal Judge Hood's Order, but he filed a Reply to the Amended Final Order of Dismissal. ECF No. 27-13. This federal habeas Petition followed and was filed on August 17, 2015. ECF No. 1.

III.    Discussion

A.  Petitioner's Motion to Stay

On September 23, 2015, Petitioner filed a Motion to Stay this habeas action. ECF No. 23. There, Petitioner maintains that he has a "pending 2254 with ground 3 and 4 issues-which is also pending in the state court." *Id.* On November 2, 2015, Respondent filed a Response to Petitioner's Motion to Stay, ECF No. 33, and argued:

> [T]his motion should be denied and dismissed. Petitioner's claims are all technically exhausted, and as noted in Respondent's Return and Memorandum in Support of Motion for Summary Judgment, some of Petitioner's claims are subject to procedural bars. There are no grounds which are still available for review in state court. Thus, no stay is required to allow Petitioner to exhaust remedies available in state court.

---

[5] The May 7, 2014 Conditional Order of Dismissal was not made part of the record before the court.

*Id.* In Reply, Petitioner argues he has a "pending mandamus 2015-CP-40-03215 on his matters upon his second PCR as well." ECF No. 37. Therefore, Petitioner maintains his Motion to Stay should be granted. *Id.* Thereafter, the undersigned instructed the parties to file a status report with the court concerning Petitioner's "pending mandamus." ECF No. 41. The status reports indicated that the mandamus matter was still pending. ECF Nos. 46, 47.

Later, after a Public Index Records Search, the court learned that Petitioner's Writ of Mandamus, Civil Action Number 2015-CP-40-03215, was dismissed pursuant to Rule 12(b) of the South Carolina Rules of Civil Procedure on January 29, 2016. *See* ECF No. 59. In compliance with an instruction from the court, Respondent filed a copy of the Order of Dismissal on May 13, 2016. ECF No. 62. The Order of Dismissal is a Form 4 Order that indicates "[t]he Plaintiff's motion to dismiss all final orders of dismissals was withdrawn." ECF No. 62-1.

The undersigned recommends denying Petitioner's Motion to Stay this matter, ECF No. 23, based on the undersigned's confirmation that Petitioner's writ of mandamus matter is no longer pending, and this Motion to Stay is now moot.

### B. Federal Habeas Issues

Petitioner raises the following issue in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: See attached sheet 1 of 2. ECF No. 1 at 5.
> Supporting Facts: The trial just erred in charging the jury that malice may be inferred from the use of a deadly weapon where there was evidence presented that would reduce the charge from assault and battery with intent to kill to assault and battery of a high and aggravated nature. ECF No. 1-1 at 1 (Petitioner cites attached sheets 1 of 2 – 2 of 2).
>
> GROUND TWO: Ineffective Assistance of Counsel. ECF No. 1 at 7.
> Supporting Facts: In violation of Petitioner's right to the effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, trial counsel failed to object to the trial judge's instruction to the jury which permitted the jury to infer malice from the use of a deadly weapon in

order to convict him of assault and battery with intent to kill. ECF No. 1-1 at 3
(Petitioner cited attached sheets 1 of 55 – 55 of 55).
(1) Whether the PCR court errored in ruling that trial counsel was not ineffective
in failing to object to Petitioner being seen in shackles.
(2) Whether the PCR court errored in ruling that trial counsel was not ineffective
in failing to have a second mental evaluation conducted.
(3) Whether the PCR court errored in ruling that trial counsel was not ineffective
in failing to investigate the matters of the nail file vs. screwdriver.
(4) Whether the PCR court errored in ruling that trial counsel was not ineffective
in failing to object to the judge's instruction to the jury which permitted the jury
to infer malice from the use of a deadly weapon in order to convict him of assault
and battery with intent to kill. ECF No. 1-1 at 11-12.

GROUND THREE: Violation of the 6th and 14th Amend per the U.S. and S.C.
Const.(s). ECF No. 1 at 8.
Supporting Facts: The Applicant further argues that if this court deem that
Applicant current P.C.R. and grounds is barred. . . . for any reason(s) Applicant
argue that S.C. Const. and S.C. Uniform Post-Conviction Procedure Act itself
violates the 6th and 14th Amend. Per the Fed'l U.S. Const. ECF No. 1-1 at 60-61
(Petitioner cited attached sheets 1 of 10 – 7 of 10).

GROUND FOUR: After/Newly Discovered Evidence. ECF No. 1 at 10.
Supporting Facts: Applicant argues that after his P.C.R. hearing he found out that
SCDC per Dir. Of H.I.R. Nadine Pridgen that SCDC does not have "any" of his
mental health records from 91-98. . . . (Petitioner cited attached sheets 7 of 10 –
10 of 10).

C.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that

assertion either by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the Court assume the existence of a genuine issue of material fact when none exists.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

D.  Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28

U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

### a.  Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)(emphasis added in

original)).  "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412).  In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

### b.  Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims.  First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  *Id.* at 687.  Second, the

petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For

purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2. Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

    (A)     the applicant has exhausted the remedies available in the courts of the State; or

    (B)     (i) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of the judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court

explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental

miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495-96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.    Analysis

A. Procedurally Barred Grounds

As an initial matter, Respondent maintains Grounds One and Three are procedurally barred from habeas review. ECF No. 27 at 13-14. Additionally, Respondent contends that Ground Four is not cognizable on habeas review and is also procedurally barred. *Id.* at 15. In his Response to Summary Judgment, Petitioner only responds to the arguments concerning his Ground Two Claims and its subparts. ECF No. 57. Petitioner does not address the procedural bar arguments. The undersigned will address each procedural bar argument in turn.

1. Ground One

Respondent acknowledges that Ground One was the basis for Petitioner's direct appeal. ECF No. 27 at 13. Respondent indicates that in his appellate brief, Petitioner cited to the case of *State v. Belcher*, 685 S.E.2d 802, 810 (2009). *Id.* However, Respondent argues that "Petitioner's trial took place September 1-3, 2009, approximately one month before the Belcher court released its seminal holding, [and] [t]rial counsel failed to object to the inferred malice charge during the charging conference and failed again to object after the judge charged the jury." *Id.* at 13-14.

Therefore, Petitioner maintains Ground One is not preserved for review and is procedurally barred. *Id.* at 14. The undersigned agrees.

In Ground One, the basis for Petitioner's allegation is trial court error. *See* ECF No. 1-1 at 1-2. Though this issue was raised on direct appeal in Petitioner's *Anders* brief, this issue was not preserved for appellate review because no contemporaneous objection was made to the jury charge during Petitioner's criminal trial. In South Carolina, for an issue to be preserved for appellate review, there must be a contemporaneous objection made when the evidence, such as testimony, is sought to be introduced. *State v. Glenn*, 330 S.E.2d 285 (S.C. 1985) (holding defendant failed to preserve for review the question of improper impeachment where trial judge ruled that defendant's prior prostitution convictions could be used for impeachment purposes and defendant elected not to testify); *State v. Hoffman*, 440 S.E.2d 869, 873 (S.C. 1994) ("A contemporaneous objection is required to properly preserve an error for appellate review.").

According to the trial transcript, trial counsel did not lodge an objection during the jury charge. Therefore, this issue was not preserved for appellate review, and is procedurally barred from habeas review. *See e.g.*, *Satterfield v. Zahradnick*, 572 F.2d 443, 446 (4th Cir. 1978) ("Errors at trial not objected to, in contravention of State contemporaneous objection rules, are not cognizable in federal habeas corpus proceedings, absent a showing of cause for non-compliance and prejudice."); *McKenzie v. Cartledge*, No. 8:13-CV-02488-RBH, 2014 WL 3919711, at *2 (D.S.C. Aug. 11, 2014) *appeal dismissed*, 595 F. App'x 240 (4th Cir. 2015) (finding a procedural bar where "Petitioner raised the issue on direct appeal to the South Carolina Court of Appeals, [and] the appellate court found that the issue was unpreserved for direct review. Indeed, South Carolina appellate courts require that issues be adequately raised to

and ruled upon by a trial court for appellate review for error."). Therefore, the undersigned recommends granting Respondent's Motion for Summary Judgment on Ground One.

2. Ground Three

Respondent maintains that Ground Three "was not raised to and ruled upon by the PCR judge and is thus, procedurally barred." ECF No. 27 at 14. In Ground Three, Petitioner makes a general argument for violations of the Sixth and Fourteenth Amendments of the United States and South Carolina Constitutions. ECF No. 1 at 8. Further, Petitioner argues that if for some reason this court finds that some of his grounds are barred, then his argument changes to: the South Carolina Constitution and the Uniform Post-Conviction Procedure Act violates the United States Constitution. ECF No. 1-1 at 60-61. None of these issues were raised during PCR. Therefore, the undersigned finds these issues are procedurally barred from habeas review.

The undersigned has reviewed the PCR court proceedings and the PCR court's order of dismissal. Based on this review, the undersigned finds no issues in Ground Three were ruled upon by the PCR court. Furthermore, Ground Three was not raised in Petitioner's appeal from his PCR dismissal. *See* ECF No. 27-6. Therefore, Ground Three is procedurally barred from habeas review.

*See e.g., Coleman v. Thompson,* 501 U.S. 722 (1991) (holding an issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court."); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this claim to the state's highest court in

a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus"). Accordingly, the undersigned recommends dismissing Ground Three without review on the merits.

    3.  Ground Four

    Respondent maintains that Ground Four is not a cognizable claim on habeas review. ECF No. 27 at 15. Mainly, Respondent argues that the "after-discovered evidence" Petitioner mentions in his Petition does not fit within the definition of newly-discovered evidence. *Id.* Furthermore, Respondent argues that "[n]ewly discovered evidence is not ground for federal habeas relief; the district courts are concerned with constitutional violations, not the correction of factual errors." *Id.* Finally, Respondent asserts that Ground Four was not raised in Petitioner's initial application for PCR, and is therefore not preserved for review. *Id.*

    The undersigned finds that Ground Four is not cognizable on federal habeas review and is procedurally barred. First, the purpose of a habeas petition is to enable a prisoner to obtain relief from a state court judgment for violations of the Constitution or other federal laws. *See e,g., Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) (citing 28 U.S.C.A. § 2254(a)) ("Pursuant to § 2254, a petitioner may obtain relief from a state court judgment 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"). Here, Petitioner's allegation of "after discovered evidence" has no bearing on whether he is in custody in violation of the Constitution or another federal law. Furthermore, this issue was not raised to the attention of the state courts. Therefore, it is also procedurally barred from review. *See e.g.*, *Coleman v. Thompson,* 501 U.S. 722; *Baker v. Corcoran*, 220 F.3d at 288;

*Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13. Accordingly, the undersigned recommends dismissing Ground Four without review on the merits.

B.  Merits Review

In Ground Two, Petitioner argues trial counsel was ineffective based on four separate grounds or subparts. ECF No. 1 at 7; ECF No. 1-1. Respondent moves for summary judgment, arguing that each ground is meritless. ECF No. 27 at 16-23. The undersigned will address the merits of each ground separately.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).   In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice.  466 U.S. at 687.  Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable.  *Id.* at 688-89.  Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1. Ineffective Assistance of Counsel—Failure to Object to Petitioner Being Seen in Shackles

In Ground Two (A), Petitioner argues that his trial counsel was ineffective for failing to object to him being seen in shackles. ECF No. 1-1 at 13. Petitioner maintains that at the beginning of his trial, trial counsel requested that Petitioner's metal restraints be replaced with plastic restraints "just to avoid any noise." *Id.* In response, Petitioner represents the trial court told trial counsel "to talk to security about it, but he did not want the jury to see Petitioner

shackled." *Id.*

Respondent argues that trial counsel did not err because "on multiple occasions, trial counsel objected to the use of shackles in the presence of the jury." ECF No. 27 at 16. As Petitioner indicates, Respondent represents that at the beginning of Petitioner's criminal trial, trial counsel requested plastic rather than metal shackles. *Id.* Further, Respondent maintains "[t]he record reflects trial counsel did everything possible to prevent Petitioner's shackles from being visible to the jury [and] Petitioner identified no evidence indicating the jury saw the shackles at any point in the trial and he suffered a resulting prejudice which affected the outcome of the trial." *Id.* at 18. The undersigned agrees.

As Respondent asserts, when determining the merits of this issue, The PCR court found the allegation was without merit because trial counsel objected to the use of restraints on multiple occasions. App. 568. The PCR court found that the trial court resolved the issue by "deferring to security personnel in the courtroom, [and] ultimately concluded the jury could not see the shackles and denied the request." *Id.* Additionally, the PCR court acknowledged the trial court granted trial counsel's request that Petitioner take the stand outside the presence of the jury and the shackles be blocked from their sight. *Id.* The PCR court concluded that trial counsel "undertook diligent and objectively reasonable precautions to avoid the jury ever seeing that [Petitioner] was wearing shackles." *Id.* at 569. In any event, the PCR court determined that Petitioner failed to show that the restraints were ever seen by the jury "or otherwise resulted in prejudice to his case." *Id.*

At the PCR hearing, trial counsel Cooper testified that he objected to the use of shackles during Petitioner's trial and "re-raised" the motion just before Petitioner took the stand. App. 546. Trial Counsel testified he objected so that the jury would not see Petitioner wearing the

shackles. *Id.* Evidence from Petitioner's criminal trial transcript confirms trial counsel's PCR testimony. *See* App. 12; 286.

The undersigned finds that Petitioner cannot show the PCR court unreasonably applied federal law or unreasonably applied the facts in denying relief upon this claim. First, because evidence demonstrates trial counsel took diligent action on the shackles issue, Petitioner has failed to demonstrate that trial counsel was deficient. Furthermore, as the PCR court determined, Petitioner failed to demonstrate that any member of the jury saw him in shackles and as a result rendered a prejudiced verdict. Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, the undersigned recommends granting Respondent's Motion for Summary Judgment on Ground Two (A) and dismissing this habeas ground.

> 2. Ineffective Assistance of Counsel—Failure to Order a Second Mental Evaluation

In Ground Two (B), Petitioner argues that his trial counsel was ineffective for failing to have a second mental evaluation conducted on him. ECF No. 1-1 at 21. Petitioner maintains that during PCR he testified that he discussed his medical history with his two trial attorneys at the beginning of his trial. *Id.* Further, Petitioner represents that he suffers from post-traumatic stress disorder and is currently on "anti-psychotic" medication for schizophrenia. *Id.* at 22. However, Petitioner maintains that during his criminal trial he was not "on medication." *Id.* Petitioner acknowledges he underwent a mental health examination but argues that trial counsel failed to get a second evaluation completed after he specifically requested one. *Id.* Additionally, Petitioner argues that he was not able to aid in his defense and "all he remembered was that him having a nail file in his hand and once the altercation between him and victim occurred, he blacked out, he didn't remember what happened." *Id.* at 26.

Respondent argues the evidence demonstrates that "[t]rial counsel met with Petitioner on numerous occasions to prepare for trial, and he was aware of Petitioner's history of mental health issues." ECF No. 27 at 18. Further, Respondent maintains:  "The fact that counsel undertook the required evaluation of Petitioner does not mean that counsel was ineffective." *Id.* at 19. Moreover, Respondent represents that Petitioner made no showing to discount the finding that he was competent to stand trial. *Id.* The undersigned agrees.

In its Order of Dismissal, the PCR court recounted Petitioner and trial counsels' testimony concerning Petitioner's mental health. App. 566-67. Thereafter, the PCR court found this allegation "to be wholly without merit" because the trial attorneys "reasonably relied on their perceptions and interactions with [Petitioner] during the several months prior to trial to decide a second mental health evaluation was not necessary." *Id.* at 567. Additionally, the PCR court found that trial counsel's testimony concerning Petitioner's comprehension and trial participation was credible, while Petitioner's "testimony to the contrary [was] not credible." *Id.* Therefore, the PCR court found that trial counsel was not deficient in opting not to have a second mental health evaluation performed. *Id.* Furthermore, the PCR court found that Petitioner failed to establish resulting prejudice because Petitioner "did not produce the results of a second evaluation, or the testimony of a medical expert, not any other evidence to show that had a second evaluation been sought, the results would have differed from those given by Dr. Crawford in the first evaluation." *Id.*

During his PCR hearing, Petitioner's trial attorneys testified they knew he had undergone a mental health evaluation. Specifically, trial counsel Cooper testified that Dr. Pamela Crawford had evaluated Petitioner, and he was found competent to stand trial. App. 531-32. Trial counsel Cooper testified that he did not think a second opinion as to Petitioner's competency to stand

trial was necessary because he "reviewed what Doctor Crawford had to say. . . . and [in his] own observations of him, [he] didn't see any opinion to change." App. 532. Trial counsel Cooper recalled that Dr. Crawford reported Petitioner had a history of substance abuse and stress disorder, "but she pointed out in her report that she did not think that affected his competency. . ." App. 533. On cross-examination, trial counsel Cooper testified that he never had any concerns with Petitioner's competency to stand trial and Petitioner was able to participate in [their] discussions and comprehend [them]." App. 541; *see also* App. 546. Trial counsel O'Neil also testified that Petitioner was able to participate in and comprehend conversations during meetings between the two of them. App. 557. Further, trial counsel O'Neil testified that he did not have any questions concerning Petitioner's competency to stand trial and did not believe Petitioner needed to be evaluated for a second time. *Id.*

This is not a situation in which *no* mental health evaluation was performed. Rather, Petitioner was evaluated by Dr. Pamela Crawford and found to be mentally competent to stand trial. The Fourth Circuit has held that counsel must conduct a basic factual and legal investigation to determine if a defense is available or can be developed. *Sneed v. Smith,* 670 F.2d 1348, 1353 (4th Cir. 1982). "At the heart of effective representation is the independent duty to investigate and prepare." *Stevens v. Johnson*, 575 F. Supp. 881, 885 (E.D.N.C. 1983) (citing *Goodwin v. Balkcom,* 684 F.2d 794, 805 (5th Cir. 1982), *cert. denied,* 460 U.S. 1098, (1983)). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." *Id.* (citing *Gaines v. Hopper,* 575 F.2d 1147, 1149–50 (5th Cir. 1978)). Accordingly, the undersigned finds Petitioner's trial attorneys adequately investigated the viability of Petitioner's competency to stand trial by ensuring he was evaluated, reviewing the mental health evaluation,

and conferring with Petitioner to ensure he was able to comprehend the actions taken during his trial and assist in his defense.

Additionally, Petitioner has not shown prejudice based on trial counsel's failure to procure a second mental health evaluation of Petitioner. The undersigned finds that the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law because trial counsel reasonably investigated Petitioner's competency to stand trial. Furthermore, Petitioner failed to show that had trial counsel secured a second mental health evaluation that the examiner would have come to a different medical opinion than the one rendered by Dr. Pamela Crawford. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the issue raised in Ground Two (B) is without merit and should be dismissed.

> 3. Ineffective Assistance of Counsel—Failure to Investigate the Matter of the Nail File/Screwdriver

In Ground Two (C), Petitioner argues that his trial counsel was ineffective for failing to investigate "the matters of the nail file vs. screwdriver." ECF No. 1-1 at 39. Petitioner maintains that during his testimony he "strongly contended that there was never a screwdriver involved in the altercation, also there was no screwdriver or nail file was ever produced as the weapon at trial." *Id.* at 42-43. Further, Petitioner argues that he told trial counsel that the only thing around was the victim's nail file and asked his trial counsel to ask the doctor to examine the victim and determine that a screwdriver was not used. *Id.* at 47-48. Petitioner argues that the nail file would not be considered as a weapon. *Id.* at 48.

Respondent argues that it was reasonable for trial counsel "to limit his investigation

because counsel need not investigate that which conflicts with the defendant's admission to him." ECF No. 27 at 21. Additionally, Respondent maintains that the "victim's injuries were so severe as to cause disembowelment, a life threatening injury, [and] the jury could still reasonably infer the implied malice existed because of Petitioner's use of a deadly weapon. . ." *Id.* Therefore, Respondent argues that "trial counsels' investigation into an alternative weapon, particular[ly] given Petitioner's claims [that] he blacked out during the attack, would not have created a reasonable probability of a different outcome at trial." *Id.* The undersigned agrees.

In rejecting this ineffective-assistance-of-counsel allegation, the PCR court found Petitioner failed to meet his burden of proof. App. 572. Additionally, the PCR court found "the evidence set forth in the record from trial is clear in showing the wounds inflicted to victim's body were horrific and not the product of a nail file as he now alleges." App. 573. Additionally, the PCR court found the record did not contain "any mention of a nail file" from any witness including Petitioner. *Id.* Moreover the PCR court held that the "instrument" used during the crime had little bearing on the ultimate analysis of the court. *Id.* Rather, the PCR court determined that the jury could have reasonably inferred implied malice existed based on the victims multiple stab wounds, the victim's disembowelment, and the trauma center surgeon's testimony that victim's injuries were life-threatening. App. 574.

Trial counsels' PCR testimony corroborates the PCR court's finding. During the PCR hearing, trial counsel testified that while practicing Petitioner's testimony, he found Petitioner's testimony and recounting of the events were inconsistent. App. 537. Further, he testified that no weapon was ever introduced at the trial. App. 538. When asked whether he spoke to anyone about whether the victim's wounds could have been made by a screwdriver, trial counsel Cooper testified:  "they actually extended the cut to actually, you know, put her back together and then

sewed her back up. So whatever the way if happened then actually looked worse." *Id.* On cross-examination, trial counsel Cooper testified that during Petitioner's criminal trial, the victim identified Petitioner as the culprit, and she believed Petitioner had stabbed her with a screwdriver. App. 543-44. Additionally, trial counsel agreed that "other witnesses testified that she had said in the moment that it was a screwdriver." App. 544. Trial counsel Cooper recalled Petitioner mentioning a nail file at some point, but he does not recall whether he advised Petitioner to mention it or not during Petitioner's testimony. *Id.* Rather, he testified:

> I just remember the main problem I had was whether he said nail file, no nail file, blackout, no blackout, he had to be-I wasn't happy with how clear he was being. I remember feeling like he was going back and forth between details and no details, and my concern was that you've got to be clearer than that with a jury.

*Id.*

Trial counsel O'Neil testified that Petitioner's story to him had always been "all he remembered was that him having, him having a nail file in his hand and then once this altercation between him and the victim occurred he blacked out, he didn't remember what happened." App. 553. Further, trial counsel O'Neil testified "there's no way the wounds victim had in this case was caused by a nail file. That's the point I was trying to get across to him, that nothing—the wounds that she had, the injuries she had in this case could not have been caused by a nail file." *Id.* On cross-examination, trial counsel testified that Petitioner kept a tool box under his kitchen sink, and Petitioner had been in the house directly before he came out to confront the victim. App. 556. Additionally, Counsel agreed that "[t]here was evidence in the record that the jury could have inferred that [Petitioner] had a screwdriver." *Id.*

The undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting Petitioner's ineffective-assistance-of-counsel claim, or that the PCR court made objectively unreasonable factual

findings. A review of the trial transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here. Additionally, the PCR court found trial counsels' testimony to be credible and found Petitioner not to be credible. App. at 573. This credibility determination is also entitled to deference. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003). Petitioner has failed to demonstrate that the PCR court unreasonably misapplied the *Strickland/Hill* test concerning his allegations that trial counsel was ineffective for failing to investigate whether a nail file was used to stab victim rather than a screwdriver. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground Two (C).

> ### 4. Ineffective Assistance of Counsel—Failure to Object to Jury Instruction on Malice

In Ground Two (D), Petitioner argues the PCR court erred in ruling that trial counsel was not ineffective in failing to object to the judge's instruction to the jury which permitted the jury to infer malice from the use of a deadly weapon in order to convict him of ABWIK. ECF No. 1-1 at 50. Respondent argues that Petitioner's reliance on the case of *State v. Belcher*, 685 S.E.2d 802 (2009) is misplaced because "[r]equiring counsel to anticipate future events that may occur after representation has ended would hold trial counsel ineffective based upon counsel's failure to utilize a crystal ball or have Periclean foresight, both of which are inconsistent with *Strickland*." ECF No. 27 at 22. Therefore, Respondent maintains the PCR court "made reasonable factual findings and reasonably applied federal precedent in concluding that trial counsel was not ineffective [and] Petitioner is not entitled to habeas relief." *Id.* at 23.

The trial court instructed the jury that ABWIK "is an unlawful act of violent injury to the person of another with malice aforethought, either express or implied." App. 372. Additionally,

the trial court instructed:

> The presence of malice is a required element of [ABWIK]. Malice is defined as being hatred or ill-will. Malice in its legal sense does not necessarily import ill-will toward the individual injured but signifies rather a general malignant recklessness of the lives and the safety of others. Or a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief.

> Malice is the wrongful intent to injure another person. It indicates a wicked or depraved spirit intent on doing wrong. Malice is a legal term applying wickedness and excluding a just cause or excuse. It is the doing of a wrongful act intentionally and without just cause or excuse.

> The term malice indicates a formed purpose and desire to do a wrongful act under the circumstances that exclude any legal right to do it.

> Malice may be expressed or implied. The words expressed or implied add nothing to the meaning of the word malice. They do not imply any – or don't imply different kinds of malice but merely the manner in which the only kind known to the law may be shown to exist. That is, either by positive evidence or by inference.

> Expressed malice is when there is a deliberate intention to unlawfully take the life of another. Implied malice is when the circumstances demonstrate a wanton or reckless disregard for human life or a reasonably prudent man would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act.

> The law says that if one intentionally shoots or stabs another with a deadly weapon, the implication of malice may arise. If facts are proven beyond a reasonable doubt sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case and you may give it such weight as determine it should receive.

> A deadly weapon is an article or instrument or substance which is likely to cause death or great bodily harm. Whether an instrument or object has been used as a deadly weapon depends upon facts and the circumstances of each case.

> [ABWIK] requires intent to kill. However, this intent need only be a general intent demonstrated by acts and conduct of the accused and other circumstances from which you may naturally and reasonably infer intent.
> . . .
> Intent may be proved with evidence of the character of the means or instrument used. Intent to kill may be inferred from the character of the assault, the use of a deadly weapon with an opportunity to deliberate or the use of a dangerous or

> deadly weapon in a manner reasonably calculated to cause death or great bodily
> harm.
> Likewise, the manner in which the instrument was used, the purpose to be
> accomplished and the resulting injuries may also prove intent. An intent may be
> inferred when it is demonstrated that the accused voluntarily and willfully
> commits an act the natural tendency of which is to destroy another's life.

App. 372-76. At the close of the trial court's instruction, neither side made an objection. App.

382. Thereafter, the trial court received a note from the jury asking for the definition of malice

again. App. 385. Once the jury returned to the courtroom, the trial court re-read the jury charge.

App. 390-93.

In its review of the charge, the PCR court determined that the *State v. Belcher* case

referenced was decided after Petitioner's trial.[6] App. 574. Noting the *Belcher* holding was a clear

break from previous South Carolina precedent concerning jury charges on inferences of malice

with use of a deadly weapon, the PCR court held that the charge given during Petitioner's trial

was "the sanctioned charge on the law." App. 574-75. Based on the timing of the *Belcher*

decision, the PCR court found that counsel "was not objectively unreasonable in failing to pose

an objection to the charge given." App. 575.

Turning to the merits of this habeas ground, the undersigned finds that Petitioner cannot

show the PCR court unreasonably applied federal law or unreasonably applied the facts in

denying relief upon this claim. The Fourth Circuit has held trial counsel is not ineffective in

failing to anticipate a change in the law that may or may not occur or to anticipate how a state

appellate court will rule on a novel question of law. *Kornahrens v. Evatt*, 66 F.3d 1350, 1360

---

[6] The undersigned notes that *Belcher* court held: "the 'use of a deadly weapon' implied malice
instruction has no place in a murder (or assault and battery with intent to kill) prosecution where
evidence is presented that would reduce, mitigate, excuse or justify the killing (or the alleged
assault and battery with intent to kill)." *State v. Belcher*, 685 S.E.2d 802, 809 (S.C. 2009)
(footnote omitted). No such mitigating evidence was presented at Petitioner's trial. *See* App. 540
(where trial counsel Cooper testified that self-defense was not a viable trial strategy).

(4th Cir. 1995); *Richardson v. Branker*, 668 F.3d 128, 141-43 (4th Cir. 2012). Furthermore, determining the proper jury charge on implied malice is a matter of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Clinkscales v. Stevenson*, No. 6:11-1160-TMC-KFM, 2012 WL 1030345, at *11 (D.S.C. Jan. 27, 2012) *report and recommendation adopted*, No. 6:11-1160-TMC, 2012 WL 1030256 (D.S.C. Mar. 27, 2012). Because Petitioner was not entitled to a different jury charge a matter of state law, Petitioner could not show that trial counsel was deficient in not requesting the charge. Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, the undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground Two (D) and dismissing this habeas ground.

V.    Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Petitioner's Motion to Stay, ECF No. 23, be DENIED, Respondent's Motion for Summary Judgment, ECF No. 28, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

May 23, 2016                                          Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**